## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### Civil Division

| | | |
|---|---|---|
| PATRIOT-BSP CITY CENTER II, LLC<br>1200 Liberty Ridge Drive, Suite 115<br>Wayne, Pennsylvania 19087, | : | |
| | : | |
| PATRIOT-BSP CITY CENTER III, LLC<br>1200 Liberty Ridge Drive, Suite 115<br>Wayne, Pennsylvania 19087, | : | |
| | : | |
| PATRIOT-BSP CITY CENTER IV, LLC<br>1200 Liberty Ridge Drive, Suite 115<br>Wayne, Pennsylvania 19087, | : | |
| | : | |
| PATRIOT EQUITIES, LP<br>1200 Liberty Ridge Drive, Suite 115<br>Wayne, Pennsylvania 19087, | : | |
| | : | C.A. No. 1:10-cv-00890-RMU |
| ERIK E. KOLAR<br>1703 Chantilly Lane<br>Chester Springs, Pennsylvania 19425, | : | Hon. Ricardo M. Urbina |
| | : | |
| ALAN S. WERTHER<br>516 Monticello Way<br>Plymouth Meeting, Pennsylvania 19462, | : | |
| | : | |
| MICHAEL C. KOLAR<br>5 McKinley Lane<br>Chester Springs, Pennsylvania 19425, | : | |
| | : | |
| TIMOTHY E. MCKENNA<br>162 Buckwalter Road<br>Royersford, Pennsylvania 19468, | : | |
| | : | |
| GEOFFREY C. GARDNER<br>202 Saint George Road<br>Ardmore, Pennsylvania 19003, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |

U.S. BANK, NATIONAL ASSOCIATION,   :
U.S. Bancorp Center   :
800 Nicollet Mall   :
Minneapolis, Minnesota 55402,   :
   :
     **Serve: The Corporation Trust Company**   :
            **1209 Orange Street**   :
            **Wilmington, DE 18801**   :
   :
J.P. MORGAN CHASE BANK,   :
NATIONAL ASSOCIATION   :
270 Park Avenue   :
New York, New York 10017,   :
   :
     **Serve: The Corporation Trust Company**   :
            **1209 Orange Street**   :
            **Wilmington, DE 18801**   :
   :
LAWYERS TITLE REALTY SERVICES, INC.   :
c/o LandAmerica Commercial Services   :
1025 15th Street, N.W., Suite 300,   :
Washington, D.C. 20005   :
   :
     **Serve: The Corporation Trust Company**   :
            **1209 Orange Street**   :
            **Wilmington, DE 18801**   :
   :
STUART H. GARY   :
c/o Gary & Regenhardt PLLC   :
8500 Leesburg Pike, Suite 7000   :
Vienna, Virginia 22182   :
   :
           Defendants.   :

---

## VERIFIED FIRST AMENDED COMPLAINT

Plaintiffs, Patriot-BSP City Center II, LLC, Patriot-BSP City Center III, LLC, Patriot-BSP

City Center IV, LLC, Patriot Equities, LP, Erik E. Kolar, Alan S. Werther, Michael C. Kolar,

Timothy E. McKenna and Geoffrey C. Gardner, by and through their undersigned counsel, file this

2

Verified First Amended Complaint (the "Complaint") seeking damages, declaratory and injunctive relief against Defendants U.S. Bank, National Association, J.P. Morgan Chase Bank, National Association, Lawyers Title Realty Services, Inc., and Stuart H. Gary, and in support state as follows.

## PARTIES

1.     Plaintiff Patriot-BSP City Center II, LLC ("Patriot II") is a Delaware limited liability company with a principal place of business located at 1200 Liberty Ridge Drive, Suite 115, Wayne, Pennsylvania 19087.

2.     Plaintiff Patriot-BSP City Center III, LLC ("Patriot III") is a Delaware limited liability company with a principal place of business located at 1200 Liberty Ridge Drive, Suite 115, Wayne, Pennsylvania 19087.

3.     Plaintiff Patriot-BSP City Center IV, LLC ("Patriot IV") is a Delaware limited liability company with a principal place of business located at 1200 Liberty Ridge Drive, Suite 115, Wayne, Pennsylvania 19087.  Patriot II, III and IV may be referred to collectively hereafter as "Patriot."

4.     Patriot Equities, L.P. ("PELP") is a Pennsylvania limited partnership with a principal place of business located at 1200 Liberty Ridge Drive, Suite 115, Wayne, Pennsylvania 19087.

5.     Plaintiff Erik E. Kolar is an individual residing at 1703 Chantilly Lane, Chester Springs, Pennsylvania 19425.

6.     Plaintiff Alan S. Werther is an individual residing at 516 Monticello Way, Plymouth Meeting, Pennsylvania 19462.

7.     Plaintiff Michael C. Kolar is an individual residing at 5 McKinley Lane, Chester Springs, Pennsylvania 19425.

8.      Plaintiff Timothy E. McKenna is an individual residing at 162 Buckwalter Road, Royersford, Pennsylvania 19468.

9.      Plaintiff Geoffrey C. Gardner is an individual residing at 202 Saint George Road, Ardmore, Pennsylvania 19003.  PELP, Erik Kolar, Werther, Michael Kolar, McKenna and Gardner may be referred to collectively hereafter as the "Guarantors."

10.     Defendant U.S. Bank, N.A. ("U.S. Bank") is a national banking association organized and existing under the laws of the United States with a principal place of business located at U.S. Bancorp Center, 800 Nicollet Mall, Minneapolis, Minnesota 55402.

11.     Defendant JPMorgan Chase Bank, N.A. ("JPMorgan") is a national banking association with a principal place of business located at 270 Park Avenue, New York, New York 10017.

12.     Defendant Lawyers Title Realty Services, Inc. ("Lawyers Title") is a Virginia corporation with a principal place of business located at c/o LandAmerica Commercial Services, 1025 15th Street, N.W., Suite 300, Washington, D.C. 20005.

13.     Defendant Stuart H. Gary is an attorney licensed to practice in the Commonwealth of Virginia and the District of Columbia, with an office address c/o Gary & Regenhardt PLLC, 8500 Leesburg Pike, Suite 7000, Vienna, Virginia 22182.

## JURISDICTION

14.     This Court has jurisdiction in this matter pursuant to 28 U.S.C. Section 1441, in that this action was originally filed in the Superior Court of the District of Columbia and in that defendant U.S. Bank thereafter filed a notice of removal removing this action to this Court.

4

## FACTUAL BACKGROUND

15.     On or about January 9, 2008, U.S. Bank, as "Agent" for Lenders, and as a Lender, entered into a Loan Agreement with Patriot, as borrower (the "Loan Agreement," a true and correct copy of which is attached hereto as Exhibit A).

16.     Pursuant to the Loan Agreement, U.S. Bank committed to lend Patriot up to the sum of $66,600,000 (the "Loan") in connection with Patriot's purchase, construction, renovation, and improvement of the land and improvements located at 1401-1403 New York Ave. NE, Washington, D.C. more commonly known as the site of The Hecht Company Warehouse, an art deco "Streamline Moderne" style building listed on the National Registry of Historic Places (the "Property").

17.     The purpose of the Loan was to provide defendants with the funds necessary to redevelop the Property and make it suitable for leasing or sale to third parties. *See* Loan Agreement, § 1.1 ("Lender . . . agrees to lend to Borrower . . . the proceeds of the Loan . . . for the purpose of refinancing the acquisition costs of the Property, leasing the Improvements, performing the Renovations, paying interest on the Loan, and otherwise paying the approved costs set forth in the Sworn Construction Cost Statement").

18.     Specifically, the Loan Agreement provides that:

a.     Interest on the Loan shall be paid from the proceeds of the Loan (*id.*, § 3.1, Fourth Paragraph);

b.     Construction costs (including amounts payable under the Davis Contract) shall be paid from the proceeds of the Loan (*id.*, § 3.6(c));

c.     Real estate taxes shall be paid from the proceeds of the Loan (*id.*, § 3.6(h)); and

d.      Other indirect (non-construction) items (including, without limitation, utility

bills) shall be paid from the proceeds of the Loan (*id.*).

19.      The Loan Agreement provided that Patriot would repay the principal amount of the

Loan on the Maturity Date of January 10, 2011, unless extended as provided for therein.  It also

provided for payment of interest on the outstanding principal balance on a monthly basis.

20.      To secure the Loan, Patriot executed a Purchase Money Deed of Trust ("Deed of

Trust") in favor of Lawyers Title as Trustee for the benefit of U.S. Bank.  A true and correct copy

is attached hereto as Exhibit B.

21.      By separate deed dated April 15, 2010, but not recorded until May 5, 2010, U.S.

Bank purported to replace Lawyers Title with Mr. Gary as a substitute trustee.  A copy of such deed,

received from Lawyers Title on June 1, 2010 at 1:34 p.m., is attached hereto as Exhibit J.  Neither

U.S. Bank nor JPMorgan nor Lawyers Title nor Mr. Gary informed plaintiffs that a substitute trustee

had been appointed, despite the fact that the deed which effected such substitution was recorded ***on***

***the same day that U.S. Bank and its counsel sent defendants their notice of the impending***

***foreclosure sale.***  Instead, U.S Bank waited until noon on June 1, 2010 to first inform plaintiffs

(through their brief in opposition to plaintiffs' motion for a temporary restraining order) that a

substitute trustee had been appointed.  Only after U.S. Bank served such brief at noon on June 1,

2010, did Lawyers Title finally contact plaintiffs' counsel to inform plaintiffs that a substitute trustee

had been appointed.

22.      The Deed of Trust purports to empower the Trustee to sell the property at a

foreclosure sale in accordance with the laws of the District of Columbia only upon: (i) a default by

Patriot in the payment of principal or interest under the Loan Agreement; (ii) a breach by Patriot of

any representation, warranty or covenant in the Deed of Trust that remained uncured after any applicable cure period; or (iii) after written notice to Patriot, upon the occurrence of any other Event of Default as defined in the Loan Agreement and other loan documents.

23.    To further secure the Loan, the Guarantors executed a "Repayment Guaranty (Limited)" (the "Patriot Guaranty," a true and correct copy of which is attached hereto as Exhibit C), which provided that, upon an Event of Default by Patriot as defined in the loan documents, the Guarantors would pay U.S. Bank up to $16,650,000 of the principal amount due under the Loan, plus accrued interest thereon and certain related expenses.

24.    The Loan and the Loan Agreement was structured as a syndicated credit facility in which it was contemplated that another Lender or Lenders would advance a portion of the funds committed under the Loan.  As a result, in connection with the Loan Agreement, Patriot and U.S. Bank executed a "Market Flexibility Agreement" which provided, among other things, that U.S. Bank would attempt to syndicate the Loan during a "Syndication Period" which extended for one hundred and eighty days after the closing of the Loan, and that if it could not do so, U.S. Bank's commitment to lend would be reduced to a "Maximum Final Hold Amount" of $30,000,000, and Patriot would be required to pay to U. S. Bank, upon thirty days notice, any amounts owing under the Loan in excess of that amount (and that failure by Patriot to do so would be an Event of Default under the Loan Agreement).

25.    On the eve of executing the Loan Agreement, U.S. Bank precipitously demanded that Patriot provide additional collateral in the form of guarantees from the spouses of the individual Guarantors.  Patriot and the Guarantors refused this request.  Following the Loan closing, U.S. Bank attempted to syndicate the Loan to Washington Mutual Bank ("WaMu") and reported to Patriot that

WaMu required that certain modifications be made to the Loan, including, principally, that the Guarantors provide guaranties from their spouses – which is, as will be seen, a violation of federal law.

26.     In or about September 2008, U.S. Bank once again demanded that Patriot and the Guarantors provide guaranties from the Guarantors' spouses -- this time, purportedly, as an accommodation to WaMu – and threatened that if they failed to do so, U.S. Bank would call the amount of the Loan in excess of $30,000,000.  As of September 2008, the principal balance outstanding under the Loan was approximately $48,000,000, meaning that U.S. Bank was at that time holding an $18,000,000 gun to Patriot's head.

27.     The Guarantors again refused to provide U.S. Bank with guaranties from their spouses. U.S. Bank demanded, alternatively, that Patriot provide it with an additional $10,000,000 in collateral for the Loan.  Thus, U.S. Bank presented Patriot and the Guarantors with a classic "Hobson's Choice," i.e., have the Loan called and be obligated to repay $18 million within ten days or post additional collateral of $10 million. With U.S. Bank threatening to call the Loan otherwise, Patriot posted the $10 million under economic duress.

28.     Having presented Patriot with a Hobson's Choice, and thereby exacted Patriots acquiescence to the additional collateral requirement, on or about September 19, 2008, U.S. Bank syndicated a portion of the Loan to Washington Mutual Bank ("WaMu"), and the Loan Agreement was amended by a "Modification Agreement," a true and correct copy of which is attached hereto as Exhibit D.  Under the Loan Agreement, as amended, WaMu became a Lender.

29.     Pursuant to the Modification Agreement, and under the same economic duress, Patriot caused $8,000,000 of its own funds to be deposited into one or more "blocked" bank accounts

controlled and held by U.S. Bank as Agent for the Lenders (the "Blocked Account"), which funds, upon the occurrence of a "monetary Event of Default" as defined therein, and only upon such an occurrence, Agent was permitted to apply to the payment of the Loan.

30.     Pursuant to the Modification Agreement, and under economic duress, Patriot (or the Guarantors on behalf of Patriot) also delivered to U.S. Bank an irrevocable standby letter of credit in the amount of $2,000,000 (the "LOC"), upon which U.S. Bank was permitted to draw only in the event of: (i) any "monetary Event of Default"; (ii) a failure by Patriot to deliver a renewal or extension of the LOC as required therein; or (iii) if U.S. Bank reasonably believed that its rights to draw upon the LOC could be in jeopardy (in the event of occurrences (ii) and (iii), U. S. Bank was not permitted to retain the funds or apply them to amounts owing under the Loan, but was required instead to deposit the funds into a "Blocked Account").

31.     In addition to the Blocked Account and LOC, in late 2008 one of the members of Patriot, Buchanan Urban Investors II, LLC ("Buchanan"), pre-funded a "springing guarantee" which was due to be funded sometime in 2010 in the event that Patriot failed to achieve certain leasing requirements and/or debt coverage ratios, by depositing $8,325,000 into a U.S. Bank-controlled account (the "Buchanan Collateral").

32.     Under the terms of a "Repayment Guaranty (Limited)" that Buchanan gave to U.S. Bank at the time that the Loan Agreement was executed (the "Buchanan Guaranty"), which provided, like the Patriot Guaranty, that upon an event of default by Patriot under the loan documents Buchanan would pay U.S. Bank up to $16,650,000 of the principal amount due under the Loan, plus accrued interest thereon and certain related expenses, Buchanan could discharge itself of any liability under the Guaranty by making, within certain time parameters, a "principal payment" of $8,325,000.

33.     On or about September 25, 2008, the United States Office of Thrift Supervision seized WaMu from Washington Mutual, Inc. and placed it into the receivership of the Federal Deposit Insurance Corporation ("FDIC"), which then sold WaMu to JPMorgan.  As a result, JPMorgan succeeded to WaMu's interest in the Loan Agreement, and since then has been a Lender thereunder.  At all times relevant hereto, U.S. Bank has acted as the Agent of JPMorgan with respect to the Loan.

34.     As part of the Loan Agreement, U.S. Bank approved, and the parties incorporated as an exhibit C thereto, a loan budget totaling $66,600,000.

35.     The loan budget included, among other things, funds for "general construction" in the amount of $4,662,000.  It also provided for, among other things, a "net interest reserve" in the amount of $8,682,665, which was to be used by Patriot to pay interest on the Loan (and any periodic payments owing under any "Swap Transaction" with Lenders or their affiliates – in essence, insurance against interest rate fluctuations with respect to the Loan), and an Operating Expense Reserve in the amount of $1,000,000, which was to be used by Patriot to pay utility and other expenses during the construction and renovation of the Property.

36.     The Loan Agreement contained a "Leasing Hurdle" which provided that Patriot would cause at least 30% of the space within the "Improvements" (defined as approximately 770,000 square feet of industrial space contained in six buildings at the Property) to be leased by on or about April 9, 2009.

37.     The Loan agreement further provided that a failure by Patriot to achieve the Leasing Hurdle would constitute an event of default:

> within twenty (20) days *after* receipt of written notice that such obligation was not performed; provided that, if cure cannot reasonably be effected within such 20-day

10

period, such failure *shall not be an event of default hereunder* so long as Borrower promptly (in any event, within ten (10) days after receipt of such notice) *commences* cure, and thereafter diligently (in any event, within forty-five (45) days after receipt of such notice) prosecutes such cure to completion . . . . (Emphasis added.)

38.     On or about November 17, 2008, Patriot entered into a general construction contract with James G. Davis Construction Corporation to perform certain construction services including, but not limited to, demolition, concrete work, carpentry, surveying, and installation of mechanical, electrical, plumbing, heating and fire alarm systems (the "Davis Contract"). A true and correct copy is attached hereto as Exhibit E. U.S. Bank knew and well-understood that the Improvements could not be leased unless and until the work provided for in the Davis Contract was completed.

39.     Pursuant to the Loan Agreement, Patriot furnished U.S. Bank with a copy of the Davis Contract. U.S. Bank approved the Davis Contract and committed to fund all sums due and owing to Davis pursuant to the Loan Agreement and the terms of the Davis Contract.

40.     The Davis Contract provided for a guaranteed maximum price of $3,108,684, subject to additions and deductions by change order, for the work Davis was to perform, and U.S. Bank allocated that amount of the general construction funds in the loan budget for that purpose. This sum was later increased by $38,102 pursuant to change orders approved and paid by U.S. Bank, for a total of $3,146,786.

41.     Following U.S. Bank's approval of the Davis Contract, Davis began to furnish the labor, materials and services provided for in the Davis Contract and, pursuant to the procedures set forth in the Loan Agreement, Patriot submitted the following draw requests to U.S. Bank for payment to Davis, which requests the Bank funded in full:

| Draw Request No. | Date of Request | Amount |
|---|---|---|
| 8 | in or about December, 2008 | $572,787 |
| 9 | on or about January 16, 2009 | $396,729 |
| 10 | on or about February 13, 2009 | $739,078 |

42.     Thus, following the funding of the February 13, 2009 draw request, U.S. Bank had advanced $1,708,594 of the sum that had been allocated from the loan budget for the work to be performed by Davis, leaving $1,438,192 under the approved loan budget for completion of the Davis Contract, at which point the space within the Improvements would have been suitable for leasing.

43.     On or about March 16, 2009, Patriot submitted Draw Request No. 11 to U.S. Bank, which included the sum of $409,291 for payment to Davis for work performed by Davis prior to that date.  A true and correct copy is attached hereto as Exhibit F.  On March 30, 2009, U.S. Bank approved Draw Request No. 11.  True and correct copies of e-mail correspondence demonstrating U.S. Bank's approval is attached hereto as Exhibit G.

44.     Prior to April 9, 2009, but following U.S. Bank's approval of Draw Request No. 11, including the $409,291 allocated for payment to Davis, U.S. Bank, as Agent for the Lenders, abruptly and without notice, and without legal justification or cause, unlawfully refused to fund any further payments under the Loan Agreement, including, but not limited to, payments to Davis for work that it had performed, and for work which still needed to be performed in order to render the Property suitable for leasing, which work had previously been approved by U.S. Bank and which U.S. Bank had committed to fund.

45.     As a direct and proximate result of U.S. Bank's refusal to fund any further payments under the Loan Agreement, the work to be performed under the Davis Contract was never completed,

and Patriot has been unable to meet the Leasing Hurdle set forth in the Loan Agreement. In other words, by dint of U.S. Bank's and JP Morgan's breach of their obligation to fund the construction draws, they rendered Patriot's ability to achieve the Leasing Hurdle impossible. Davis has placed a mechanic's lien against the Property and has commenced a lawsuit in the Superior Court of the District of Columbia to enforce the mechanic's lien and for breach of contract, styled *James G. Davis Construction Corp. v. U.S. Bank, N.A., et al.*, C.A. No. 0001816-10.

46.     As a direct and proximate result of U.S. Bank's refusal to fund any further payments under the Loan Agreement, property taxes due and owing on the Property (which were to be paid from the proceeds of the Loan) have not been paid; utility expenses (which were to be paid from the proceeds of the Loan) have not been paid, resulting in Water and Sewer Authority Liens being placed against the Property; and, certain interest payments (which were to be paid from the proceeds of the Loan) have not been made.

47.     On or about October 21, 2009, after Patriot refused to accede to U.S. Bank's unreasonable and extortionate demands to renegotiate the Loan, U.S. Bank delivered a letter to Patriot and the Guarantors alleging that Patriot had defaulted under the Loan Agreement by: (i) failing to achieve the Leasing Hurdle; (ii) failing to pay Davis; (iii) failing to make interest payments; (iv) failing to pay property taxes; and (v) failing to make payments purportedly due to U.S. Bank under certain "Swap Transactions."

48.     U.S. Bank demanded that Patriot cure the alleged "payment defaults" (*i.e.*, the "interest default" and the "swap payment default") within ten business days or it would accelerate the Loan, and that Patriot pay in full all outstanding property taxes within 20 days of the date of the

letter or else Patriot would be in default.  U.S. Bank "reserved its rights" with respect to the purported "leasing default."

49.     Each and every one of the alleged defaults referenced by U.S. Bank in the October 21, 2009 letter were directly and proximately caused – indeed, manufactured – by U.S. Bank's unlawful refusal to fund any further payments under the Loan Agreement after approving Draw Request no. 11 on March 30, 2009.

50.     By letter dated February 3, 2010, U.S. Bank notified Patriot and the Guarantors that it had accelerated the Loan, applied all amounts held in the Blocked Account to amounts allegedly owing under the Loan, and drawn on the LOC and applied the funds to amounts allegedly due and owing under the Loan.  A true and correct copy of such letter is attached hereto as Exhibit H.

51.     In addition, under the threat of liability under the Buchanan Guaranty, Buchanan acceded to U.S. Bank's set-off of the Buchanan Collateral.

52.     Thereafter, U.S. Bank commenced (i) an action in the United States District Court for the District of Columbia, styled *U.S. Bank, N.A. v. Patriot-BSP City Center II, LLC, et. al.*, Case No. 1:10-cv-00678, for breach of the Loan Agreement and appointment of a receiver, and (ii) an action in the United States District Court for the District of Columbia, styled *U.S. Bank , N.A. v. Patriot Equities, L.P., et. al.*, Case No. 1:10-cv-00642, asserting two claims for breach of the Patriot Guaranty (together, these actions may be referred to as the "Federal District Court Litigation").  In these cases, U.S. Bank alleges that, as of April 13, 2010, there was $34,656,707.71 in principal outstanding under the Loan after applying the funds in the Blocked Account, LOC and Buchanan Collateral. The United States District Court lacks subject-matter jurisdiction over both such actions. A motion to dismiss Case No. 1:10-cv-00678 has been filed  and remains pending.

53.     In addition, U.S. Bank served notice to Patriot that on June 8, 2010 the Property will be sold at a foreclosure sale to be held at the offices of Alex Cooper Auctioneers, Inc, 5301 Wisconsin Avenue, N.W., Suite 750, Washington D.C. A true and correct copy of such notice is attached hereto as Exhibit I.

54.     At the time Patriot entered into the Loan Agreement, a professional, independent appraiser prepared and issued an Appraisal Report opining that the Property had an "as is" value, as of September 2007, of approximately $87,000,000.

55.     Based upon an appraisal of the Property performed within the past twelve months, but before U.S. Bank declared defaults as aforesaid and commenced the Federal District Court Litigation and caused the foreclosure sale to be noticed, even in the current market the value of the Property exceeded the principal amount due under the Loan – *before* U.S. Bank applied the funds in the Blocked Account, LOC, and Buchanan Collateral – by more than $15,000,000.

56.     By unlawfully refusing to fund the Loan and construction expenses required to make the Property suitable for leasing; manufacturing and then declaring bogus "defaults"; causing liens to be filed against the Property and real estate taxes to go unpaid; and commencing the Federal District Court Litigation and instituting foreclosure procedures, U.S. Bank, as Agent and on behalf of Lenders, has itself breached its obligations under the loan documents and, further, has significantly devalued the Property.

57.     U.S. Bank's conduct as aforesaid, in its own behalf and on behalf of JPMorgan, was willful, wanton and outrageous, and/or taken with reckless disregard to the rights of plaintiffs, and entitles plaintiffs to an award of punitive damages.

## COUNT ONE - FOR BREACH OF CONTRACT
### (Patriot v. U.S. Bank and JPMorgan)

58.     Paragraphs 1 through 54 above are incorporated herein by reference, as though set forth in full.

59.     The Loan Agreement is a valid, enforceable contract.

60.     U.S. Bank and JPMorgan materially breached the Loan Agreement when, following U.S. Bank's approval of Draw Request No. 11, including the $409,291 allocated for payment to Davis, U.S. Bank, as Agent for the Lenders, abruptly and without notice, legal justification or cause, unlawfully refused to fund any further payments under the Loan Agreement, including, but not limited to, payments to Davis for work that had been done, and which still needed to be done in order to render the Property capable of being leased, which work had previously been approved by U.S. Bank and which U.S. Bank had committed to fund.

61.     In addition, defendants' conduct, as aforesaid, constitutes a breach of their duty of good faith and fair dealing.

62.     Prior to defendants' breaches of the Loan Agreement, Patriot had substantially performed thereunder and was not in breach thereof.  All conditions precedent to defendants' performance under the Loan Agreement had been satisfied.

63.     As a direct and proximate result of defendants' breach, Patriot has suffered compensatory and consequential damages, including but not limited to loss of the funds in the Blocked Account, LOC, and Buchanan Collateral, in an amount to be determined at trial, but in any event not less than $40,000,000.00.

16

## COUNT TWO - FOR CONVERSION
### (Patriot v. U.S. Bank and JPMorgan)

64.     Paragraphs 1 through 60 above are incorporated herein by reference, as though set forth in full.

65.     In seizing the funds in the Blocked Account, and drawing on the LOC, U.S. Bank, as Agent for the Lenders, unlawfully exercised ownership, dominion and/or control over the personalty of Patriot, in denial or repudiation of Patriot's right to such property.

66.     As a direct and proximate result of defendants' unlawful conduct, Patriot has suffered compensatory and consequential damages in an amount to be determined at trial, but in any event not less than $10,000,000.

## COUNT THREE - FOR IMPAIRMENT OF COLLATERAL
### (Guarantors v. U.S. Bank and JPMorgan)

67.     Paragraphs 1 through 63 above are incorporated herein by reference, as though set forth in full.

68.     Fundamental to the Patriot Guaranty, Guarantors have the right to have Patriot bear the cost of performance owed to U.S. Bank and have recourse against Patriot to effectuate that right.

69.     The Property serves as collateral for any debt owed by Patriot to U. S. Bank and for Guarantors' recourse against Patriot.

70.     U.S. Bank owes the Guarantors the duty to refrain from any act or omission that could impair the value of the Property.

71.     By causing the Property to decrease in value, as aforesaid, U.S. Bank, as agent for Lenders, has increased the Guarantors' risk by increasing their potential cost of performance and/or by impairing their recourse against Patriot.

72.     Guarantors have suffered direct and consequential damages by reason of defendants' actions as aforesaid and should be discharged from any obligation owed under the Patriot Guaranty to the extent that U.S. Bank has impaired the value of the Property.

## COUNT FOUR - VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT ("ECOA") (All Plaintiffs v. U.S. Bank)

73.     Paragraphs 1 through 69 above are incorporated herein by reference, as though set forth in full.

74.     ECOA provides that: "It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of . . . marital status . . . or . . . because the applicant has in good faith exercised any right under this chapter." 15 U.S.C. § 1691(a).

75.     The Federal Reserve Board ("FRB"), in Regulation B promulgated under authority provided in ECOA, has determined that requiring a spousal guarantee constitutes "discrimination on the basis of marital status." As a matter of law, the Courts are bound by FRB's interpretation of ECOA.

76.     As aforesaid, U.S. Bank demanded spousal guarantees under threat of calling the Loan.

77.     The individual Guarantors exercised their rights under ECOA by refusing to provide spousal guarantees.

78.     U.S. Bank unlawfully punished the Guarantors, *i.e.*, discriminated against them on the basis of marital status, in retaliation for their exercise of their rights under ECOA by threatening to call the Loan unless Patriot, through the Guarantors, provided an additional $10,000,000 of collateral.

79.     U.S. Bank's conduct, as aforesaid, constitutes a violation of ECOA.

## COUNT FIVE - FOR RESCISSION OF THOSE PORTIONS OF THE MODIFICATION AGREEMENT REQUIRING ADDITIONAL COLLATERAL

80.     Paragraphs 1 through 76 above are incorporated herein by reference, as though set forth in full.

81.     Due to defendants' coercive conduct, as set forth above, Patriot was compelled to execute the Modification Agreement and provide additional collateral in the form of the Blocked Account and the LOC, involuntarily and/or against its will, under economic duress and/or business necessity, in order to avoid having U.S. Bank call the Loan.

82.     Defendants' coercive conduct came at a time when Patriot was well-into the renovation of the Property, and had committed significant monies to the project, and literally had no choice but to accede to defendants' extortionate, bad faith demands.

83.     The Modification Agreement provided that if any court of competent jurisdiction determines that any part of the Modification Agreement is invalid, illegal or unenforceable "that portion shall be deemed severed from the rest, which shall remain in full force and effect as though the invalid, illegal or unenforceable portion had never been a part of the Loan Documents."

84.     Sections 5, 6, 7 and 8 of the Modification, which deal with the Blocked Account and LOC, are invalid, illegal and/or unenforceable as having been obtained through economic duress and/or compulsion of business necessity in order to avoid having U.S. Bank call the Loan, and in violation of ECOA, and the funds in the Blocked Account and LOC should be returned to Patriot.

## COUNT SIX - TO ENJOIN THE FORECLOSURE SALE
### (All Plaintiffs v. U.S. Bank, Lawyers Title and Mr. Gary)

85.     Paragraphs 1 through 81 above are incorporated herein by reference, as though set forth in full.

86.     Plaintiffs will suffer immediate and irreparable harm if U.S. Bank or the Trustee is permitted to sell the Property at the foreclosure sale.

87.     The Property is unique and irreplaceable, and plaintiffs' damages in the event of such a sale would accordingly be difficult, if not impossible, to quantify.

88.     Plaintiffs lack an adequate remedy at law.

89.     Immediate injunctive relief is necessary to stop the foreclosure sale, now scheduled for June 8, 2010, and thus to prevent irreparable injury to plaintiffs.

90.     Plaintiffs have a reasonable likelihood of succeeding on the merits of their claims as pleaded hereinabove.

91.     More harm would result to plaintiffs from the denial of injunctive relief than would result to defendants from the entry of an injunction.

92.     The public interest favors the entry of injunctive relief as prayed for herein.

## PRAYER FOR RELIEF

Wherefore, plaintiffs respectfully pray that the Court:

a.     Issue an Order restraining and enjoining any foreclosure sale of the Property by defendants *pendente lite*;

b.     Enter judgment against defendants U.S. Bank and JPMorgan for plaintiffs' direct and consequential damages caused by defendants' unlawful conduct, including but not limited to return

of the funds in the Blocked Account, LOC, and Buchanan Collateral, in an amount to be determined at trial, but in any event no less than $40,000,000.00;

    c.       Award punitive damages against defendants U.S. Bank and JPMorgan;

    d.       Award punitive damages, costs and attorneys' fees against U.S. Bank as provided for by ECOA;

    e.       Award plaintiffs interest as provided by law, attorneys' fees, and costs of suit;

    f.       Declare that Sections 5 through 8 of the Modification Agreement, which concern the Blocked Account and the LOC, are rescinded and severed therefrom, and order that U.S. Bank and JP Morgan return to Patriot the $10,000,000 which they seized from the Blocked Account and drew down from the LOC;

    g.       Declare that the Guarantor plaintiffs are discharged from any and all obligations under the Patriot Guaranty to the extent that U.S. Bank has impaired the value of the Property and/or other collateral, as determined at trial; and

    h.       Order such other and further relief as the court deems just and proper.

**KASS, MITEK & KASS, PLLC**

BY: _____
Benny L. Kass (D.C. Bar No. 025155)
1050 17th St., NW, Suite 1100
Washington, DC 20036
(202) 659-6500
*Attorneys for Plaintiffs*

21

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Verified First Amended Complaint was served via the court's electronic filing system this 2nd day of June, 2010 upon the following:

M. Roy Goldberg, Esq.
Sheppard Mullin Richter & Hampton LLP
1300 I Street, NW., 11th Floor East
Washington, D.C. 20005-3314
(202) 218-0007
*Attorneys for Defendant U.S. Bank, National Association*

JP Morgan Chase Bank, National Association
c/o Linda A. Platone
1 Chase Manhattan Plaza, 20th Floor
New York, New York 10005

Jennifer A. Brust, Esq.
Bean, Kinney & Korman, P.C.
2300 Wilson Boulevard, 7th Floor
Arlington, VA 22201
(703) 525-4000
*Attorneys for Defendant Lawyers Title Realty Services, Inc.*

_____
Benny L. Kass, Esq.

## VERIFICATION

I, Alan S. Werther, being first duly sworn on oath, do hereby state that I have read the foregoing Complaint and verify that the statement and allegations of fact contained therein are true to the best of my knowledge and belief.

_____

Alan S. Werther

Subscribed and sworn to before me this
~~30th~~ day of May, 2010.

_____

Notary Public

My commission expires: 1/7/13

```
NOTARIAL SEAL
LISA BATSCHELET
Notary Public
TREDYFFRIN TWP., CHESTER COUNTY
My Commission Expires Jan 7, 2013
```