UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| PATRIOT-BSP CITY CENTER II *et al.*, | : : : | | |
| Plaintiffs, | : : | Civil Action No.: | 10-0890 (RMU) |
| v. | : : | Re Document No.: | 1 |
| U.S. BANK NATIONAL ASSOCIATION *et al.*, | : : : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### Granting the Plaintiffs' Motion for a Temporary Restraining Order

### I. INTRODUCTION

This matter comes before the court on the plaintiffs' motion for a temporary restraining order. The plaintiffs, a group of commercial real estate developers, entered into a loan transaction ("the Loan Agreement") with the defendants to purchase, renovate and lease out a property in Northeast D.C. The renovation did not proceed as planned, and the plaintiffs defaulted on their loan in early 2009. The defendants have now scheduled a foreclosure sale to occur on June 8, 2010. The plaintiffs have filed suit against the defendants, along with a motion for a temporary restraining order ("TRO") to enjoin the foreclosure sale. Upon consideration of the parties' expedited submissions on the TRO motion, the court concludes that the plaintiffs have demonstrated their entitlement to temporary injunctive relief. Accordingly, the court grants the plaintiffs' motion.

## II. FACTUAL & PROCEDURAL BACKGROUND

On January 9, 2008, the plaintiffs entered into the Loan Agreement with defendant U.S. Bank National Association ("U.S. Bank" or "the bank"), pursuant to which the bank agreed to lend the plaintiffs approximately $66 million to purchase and renovate the Hecht Company Warehouse, an art deco "Streamline Moderne" style building listed on the National Register of Historic Places. Am. Compl. ¶ 15-17. The plaintiffs planned to eventually lease or sell the property to third parties. *Id.* The Loan Agreement required the plaintiffs to pay interest on the outstanding balance of the loan on a monthly basis, and to repay the principal amount of the loan on January 10, 2011. *Id.* ¶¶ 18-19. The Loan Agreement also included a "Leasing Hurdle" provision requiring the plaintiffs to lease out at least thirty percent of the property by April 10, 2009.[1] *Id.*, Ex. A ("Loan Agreement") ¶ 5.2. The plaintiffs failed to meet the Leasing Hurdle deadline; indeed, none of the space has been leased out to date. Pls.' Mot. at 6. The plaintiffs have also failed to pay property taxes, utility expenses, interest payments and construction fees. *Id.*; Defs.' Opp'n at 11. As a result, a mechanic's lien and water and sewage authority liens have been placed on the property. *Id.*

On October 21, 2009, U.S. Bank delivered a letter to the plaintiffs alleging that the plaintiffs had defaulted on their loan payments and demanding that the plaintiffs cure their default. Pls.' Mot. at 6; Defs.' Opp'n at 9-10. The plaintiffs failed to cure the default, and on April 23, 2010, the bank filed suit to compel the plaintiffs to satisfy their obligations under the Loan Agreement. Pls.' Mot. at 10; Defs.' Opp. at 11-12. On April 30, 2010, the bank commenced a second lawsuit for breach of the Loan Agreement. *Id.* On or about May 5, 2010,

---

[1] The plaintiffs state that the Leasing Hurdle deadline was April 9, 2009 rather than April 10, 2009. Compl. ¶ 36. For the purposes of the instant motion, this factual discrepancy is immaterial.

2

the bank notified the plaintiffs that it intended to hold a foreclosure sale on the property on June 8, 2010 at 12:30 p.m. Defs.' Opp'n at 12; Pls.' Mot. at 11.

The plaintiffs commenced this lawsuit on May 24, 2010 in the Superior Court of the District of Columbia. *See generally* Compl. Along with the complaint, the plaintiffs filed a motion for a TRO to enjoin the defendants from proceeding with the foreclosure sale. *See generally* Pls.' Mot. The defendants removed the action to this court on May 28, 2010, *see* Notice of Removal, and the plaintiffs filed an amended complaint on June 2, 2010, *see generally* Am. Compl. The defendants filed their opposition to the plaintiffs' TRO motion on June 1, 2010, *see generally* Defs.' Opp'n, and the plaintiffs filed a reply on June 2, 2010, *see generally* Pls.' Reply. With the motion now ripe for adjudication, the court turns to the legal standard and the parties' arguments.

### III. ANALYSIS

#### A. Legal Standard for Injunctive Relief

This court may issue interim injunctive relief only when the movant demonstrates "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008) (citing *Munaf v. Geren*, 128 S. Ct. 2207, 2218-19 (2008)). It is particularly important for the movant to demonstrate a likelihood of success on the merits. *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam). Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary

processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

The other critical factor in the injunctive relief analysis is irreparable injury. A movant must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 129 S. Ct. at 375 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)). Indeed, if a party fails to make a sufficient showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1986). Provided the plaintiff demonstrates a likelihood of success on the merits and of irreparable injury, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987). Finally, "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

As an extraordinary remedy, courts should grant such relief sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The Supreme Court has observed "that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Id.* Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and "tailored to remedy the harm shown." *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990).

## B. The Court Grants the Plaintiffs' Motion for a TRO

### 1. Without Temporary Injunctive Relief the Plaintiffs Face Irreparable Harm

The plaintiffs assert that because parcels of land are inherently unique, monetary damages will be inadequate to redress their injury if they lose possession of the property. Pls.' Mot. at 15. Additionally, the plaintiffs claim that loss of the property will prevent the court from rendering a meaningful decision on the merits of the case. *Id.* The defendants respond that any harm to the plaintiffs can be redressed with monetary damages. Defs.' Opp'n at 13-15. Indeed, the defendants assert, the foreclosure sale will benefit the plaintiffs because it will mitigate the plaintiffs' damages, if any, by preventing the property from falling further into disrepair. *Id.* at 15. In their reply, the plaintiffs add that the property at issue in this case is particularly "unique and historically significant," as indicated by its recognition on the National Register of Historic Places. Pls.' Reply at 6-7.

In determining whether a party has demonstrated that it will suffer irreparable harm, the court must consider two central elements. *Monument Realty LLC v. Wash. Metro. Area Transit Auth.*, 540 F. Supp. 2d 66, 74 (D.D.C. 2008). First, the harm must be "certain and great, actual and not theoretical." *Id.* (citing *Wis. Gas Co. v. Fed. Energy Reg. Comm'n,* 758 F.2d 669, 674 (D.C. Cir. 1985)). In other words, the moving party must establish that the harm is "of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Ashland Oil, Inc. v. Fed. Trade Comm'n*, 409 F. Supp. 297, 307 (D.D.C. 1976), *aff'd*, 548 F.2d 977 (D.C. Cir. 1976) (citations and internal quotations omitted). Second, to establish that the harm is irreparable, there must be no other adequate legal remedies available. *Monument Realty*, 540 F. Supp. at 74 (citing *Wis. Gas Co.*, 758 F.2d at 774). The possibility that the court could provide compensatory relief to redress a party's injury "weighs heavily against a claim of

irreparable harm." *Id.* When assessing these factors, the court must consider whether the moving party has shown that irreparable harm is "likely" to occur. *Id.* at 74-75.

With regard to the first element, the foreclosure sale of the property is scheduled for a date certain: Tuesday, June 8, 2010. *See* Pls.' Mot. at 14. The foreclosure sale will result in the plaintiffs losing possession of the property. *Id.* The plaintiffs also represent that another potential purchaser has tendered a binding offer to purchase the property for an amount in excess of the principal balance of the loan. *See* Pls.' Reply at 7-8. In light of these circumstances, the court concludes that the plaintiffs have demonstrated a substantial likelihood that they will face actual and imminent harm if the court does not enjoin the foreclosure sale. *See Five Star Dev. Resort Communities, LLC v. iStar RC Paradise Valley LLC*, 2010 WL 1005169, at *3 (S.D.N.Y. Mar. 18, 2010) (observing that "[t]he ability of a creditor to foreclose can suffice to establish irreparable harm" and noting that the plaintiff had proffered that it would face financial ruin absent injunctive relief) (citing *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir. 1989)); *cf. Sun Vill. Farms v. Bowery Sav. Bank*, 735 F. Supp. 945, 948-49 (D. Ariz. 1990) (holding that if the court were to deny the plaintiff's request for injunctive relief preventing a foreclosure sale, "the property would be listed for sale in foreclosure proceedings . . . [and the plaintiff's] interest would be completely lost").

Turning to the second element, the plaintiffs rightfully highlight cases dealing specifically with injunctive relief in the context of the loss of land and real property. *See generally* Pls.' Mot.; Pls.' Reply. Courts in this Circuit have broadly held that "[w]hen land is the subject matter of the agreement, the legal remedy is assumed to be inadequate, since each parcel of land is unique." *Monument Realty*, 540 F. Supp. 2d at 75 (quoting *Tauber v. Quan*, 938 A.2d 724, 732 (D.C. 2007)); *see also Peterson v. D.C. Lottery & Charitable Control Bd.*, 1994

6

WL 413357, at *4 (D.D.C. July 28, 1994) (stating that "[i]t is settled beyond the need for citation . . . that a given piece of property is considered to be unique, and its loss is always an irreparable injury" (quoting *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982))). Further, the property at issue is especially unique given its placement on the National Register of Historic Places. Pls.' Reply at 6-7; *cf. Monument Realty*, 540 F. Supp. 2d at 76 (concluding that because the property at issue was "valued for its uniqueness," the harm could not be remedied with monetary damages alone). Accordingly, the court concludes that the plaintiffs have established that there is a high likelihood that they will suffer actual, imminent and irreparable harm if the foreclosure sale is not enjoined.

**2. The Plaintiffs Have Established a Sufficient Probability of Success on the Merits**

Next, the court must assess the plaintiffs' likelihood of success on the merits of their breach of contract claim. *See Winter*, 129 S. Ct. at 374. Because the plaintiffs have established a high likelihood of irreparable injury absent the issuance of a TRO, they need not establish a particularly high likelihood of success on the merits to be entitled to injunctive relief. *See Cuomo v. U.S. Nuclear Regulatory Comm'n,* 772 F.2d 972, 974 (D.C. Cir.1985) (stating that "[i]njunctive relief may be granted with either a high likelihood of success and some injury, or vice versa"). Rather, the plaintiffs need only "raise[] questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977).

The plaintiffs claim that the defendants breached the Loan Agreement by failing to disburse funds that they were required to disburse under the agreement. Am. Compl. ¶¶ 58-63. By way of background, in November 2008, the plaintiffs entered into a contract with a

7

construction company that agreed to perform certain construction work on the property for approximately $3 million. Pls.' Mot. at 4. The defendants approved the construction contract. *Id.* From December 2008 through February 2009, the plaintiffs submitted three draw requests (referred to as Draw Request Nos. 8 through 10) to the defendants, and the defendants in turn funded those payments in full. *Id.* at 5. In March 2009, the plaintiffs submitted Draw Request No. 11 to the defendants, and although the defendants initially approved the request, the defendants ultimately refused to fund the request or any further payment requests relating to the construction contract. *Id.* As a result, the plaintiffs argue, the plaintiffs failed to satisfy the Leasing Hurdle provision by the April 2009 deadline. *Id.* at 5-6.

The plaintiffs claim that the defendants' failure to fund Draw Request No. 11 constituted a breach of the Loan Agreement. Am. Compl. ¶ 60. The defendants, however, respond that they were not obligated to fund that request. Defs.' Opp'n at 17. More specifically, the defendants assert that their obligation to make a disbursement only arose if the plaintiffs satisfied several conditions precedent set forth in the Loan Agreement, one of which was that the loan be "in balance" as of the disbursement date. *Id.* The defendants contend that the loan was not "in balance" when the plaintiffs submitted Draw Request No. 11 because the Operating Expense Reserve was under-funded; therefore, the defendants argue, they were not obligated to make the disbursement related to that request. *Id.* at 17-18.

The plaintiffs disagree. They argue that "for purposes of determining whether the Loan [was] in Balance, the Loan Agreement require[d] the various Reserves to be *aggregated*." Pls.' Reply at 11. The plaintiffs concede that the Operating Expense Reserve was under-funded, but assert that the Interest Reserve was over-funded, and that the two Reserves, in the aggregate, were over-funded. *Id.* Therefore, the plaintiffs maintain, the loan was "in balance" when Draw

Request No. 11 was submitted. *Id.* In other words, the plaintiffs argue that they satisfied all of the conditions precedent to the defendants' obligation to disburse the funds. *Id.* By not complying with their obligation, the plaintiffs assert, the defendants breached the Loan Agreement. *Id.*

Upon review of the parties' arguments, as well as the Loan Agreement and the other materials submitted for the court's consideration, the court concludes that the plaintiffs appear to have the better of this argument. The Loan Agreement states that "the Loan is in Balance if all remaining unpaid costs of the Property, as determined by the Agent, including *the Reserves*, do not exceed the amount of the Loan proceeds not yet advanced by the Lenders." Loan Agreement § 3.2 (emphasis added). Thus, the Loan Agreement indicates that a determination as to whether the fund is "in balance" incorporates the amounts contained in "the Reserves," *i.e.*, both the Operating Expense Reserve and the Interest Reserve. The defendants maintain that they were under no obligation to fund Draw Request No. 11 because there was a "line item out of balance situation" for the Operating Expense Reserve. Defs.' Opp'n at 17-18; *see also* Defs.' Opp'n, Ex. 1 ¶¶ 15-16. Yet because the defendants considered the status of only the Operating Expense Reserve rather than the status of the two Reserves in the aggregate, it appears that the defendants erroneously concluded that that the loan was not "in balance" and, in turn, that the plaintiffs had failed to satisfy the condition precedent to the defendants' obligation to fund Draw Request No. 11. In sum, because the plaintiffs have raised a substantial question as to whether they did, in fact, satisfy the conditions precedent to the defendants' obligation to fund the request, the plaintiffs have established, to the requisite degree, the prospect of succeeding on the merits of the breach of contract claim arising from that request.[2]

---

[2] As a result, the court need not address the prospect of the plaintiffs' success on the merits of their remaining claims.

### 3. The Balance of the Equities Favors the Plaintiffs

The court must next balance the injury that the defendants will face if the court issues a TRO against the injury that the plaintiffs will face absent a TRO. *See Amoco Prod. Co.*, 480 U.S. at 542. The plaintiffs assert that the balance of the equities favors them because they stand to lose their property if the foreclosure sale goes forward. Pls.' Mot. at 15. The defendants, on the other hand, argue that they will be harmed if the court issues a TRO because delaying the foreclosure sale will cause the property to fall even further into disrepair, diminishing the property's value. *See* Defs.' Opp'n at 35-38. The defendants also contend that the plaintiffs will face no injury absent a TRO, *see id.* at 38, an argument foreclosed by the court's analysis of the irreparable injury prong, *see* Part III.B.1 *supra*.

On balance, the court concludes that the irreparable harm that the plaintiffs will incur if the foreclosure sale goes forward as planned, *see id.*, outweighs any harm that issuing the TRO will cause to the defendants. Therefore, this factor favors the plaintiffs.

### 4. The Public Interest Considerations Favor Neither Party

The final prong of the injunctive relief analysis requires the court to consider the public interest consequences, if any, of issuing the TRO. *See Weinberger*, 456 U.S. at 312. Although each party asserts that the public interest favors its position, *see* Pls.' Mot. at 15-16; Defs.' Opp'n at 38-39, the court concludes that this factor stands in equipoise. In any event, given that the two principal factors in the analysis, as well as the balance of the equities, favor the plaintiffs, the plaintiffs have amply demonstrated that they are entitled to a TRO.

### C. The Court Grants the Defendants' Request for a Bond Pursuant to Rule 65(c)

The defendants request that the court order the plaintiffs to post a bond in the amount of "the difference between the amount owed and the current value of the Warehouse Property."

Defs.' Opp'n at 39. The defendants offer, under seal,[3] an appraisal indicating that the amount that the plaintiffs owe pursuant to the Loan Agreement significantly exceeds the market value of the property in its current condition. *See id.* The plaintiffs do not address the defendants' request for a bond. *See generally* Pls.' Reply.

Federal Rule of Civil Procedure 65(c) authorizes the court to issue a TRO "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). Because the plaintiffs fail to address the defendants' request for a bond in their reply, the court treats this request as conceded. *See, e.g.*, *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003).

Further, although the plaintiffs vigorously contest the reliability of the property appraisal offered by the defendants, *see* Pls.' Reply at 20-23, the court notes that the plaintiffs have failed to offer their own appraisal of the property's current value, *see generally id.* Instead, the plaintiffs offer a declaration from plaintiffs' counsel stating that a third-party purchaser has offered to acquire the property. *Id.*, Ex. D ¶ 14. The plaintiffs do not specify the amount offered by the third-party purchaser, stating only that it is "more than 2.3 times the 'appraised value' of the Property listed on the [defendants'] appraisal." *Id.* ¶ 15. Therefore, the court grants the defendants' request for a bond in the amount representing the difference between the amount owed by the plaintiffs and the current value of the Warehouse Property, as represented in the defendants' appraisal.

---

[3] The court granted the defendants' consent motion to file the appraisal under seal based on the defendants' representation that the public disclosure of the appraisal could interfere with the integrity of the foreclosure sale. *See* Minute Order (June 2, 2010).

## IV. CONCLUSION

For the foregoing reasons, the court grants the plaintiffs' motion for a temporary restraining order. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 7th day of June, 2010.

RICARDO M. URBINA
United States District Judge